REQUESTED BY: Hobert Rupe, Executive Director
Nebraska Liquor Control Commission
You have requested an opinion from our office on whether a farm winery licensee, or Class Y licensee, may obtain a retail license in addition to its existing Class Y license. Specifically, you have asked whether Neb. Rev. Stat. § 53-169 and § 53-171 (Reissue 2004) allow farm wineries to expand their rights by acquisition of a Class I or C license, in order to sell product not produced at the winery. It is our opinion that a Class Y licensee may not expand its rights by acquisition of a Class I or C license, in order to sell product not produced at the winery.
The statute establishing farm winery licenses, Neb. Rev. Stat. § 53-123.11 (Reissue 2004), originated with LB 279 in 1985. That statute provides, in pertinent part, that a farm winery license holder may:
 1) Sell wines produced at the farm winery onsite at wholesale and retail and to sell wines produced at the farm winery at off-premises sites holding the appropriate retail license;
 2) Sell wines produced at the farm winery at retail for consumption on the premises;
 3) Ship wines produced at the farm winery by common carrier and sold at retail to recipients in and outside the State of Nebraska. . . . .; and
 4) Allow sampling of the wine at the farm winery and at one branch outlet in the state in reasonable amounts.
At the outset, a reading of § 53-123.11 shows that farm winery licensees are limited to selling and shipping wines that they have produced. However, a question has been raised whether the exemptions for farm wineries from the provisions of Neb. Rev. Stat. § 53-169 and § 53-171 suggest that a farm winery licensee may obtain a separate retail license to sell other liquor products. For the reasons set forth below, in our opinion, §53-169 and § 53-171 were not intended to have this result.
Section 53-169 and § 53-171 are the two statutes designed to maintain the three-tiered distribution of alcohol by prohibiting certain relationships between manufacturers or wholesalers and retailers ("tied house" arrangements). LB 279 amended these two statutes to provide an exemption for farm wineries.
Neb. Rev. Stat. § 53-169 (Reissue 2004) states, in pertinent part:
 (1) No manufacturer or wholesaler shall directly or indirectly:
 (a) pay for any license to sell alcoholic liquor at retail or advance, furnish, lend, or give money for payment of such license;
 (b) purchase or become the owner of any note, mortgage, or other evidence of indebtedness of such licensee or any form of security therefor;
 (c) be interested in the ownership, conduct, or operation of the business of any licensee authorized to sell alcoholic liquor at retail; or
 (d) be interested directly or indirectly or as owner, part-owner, lessee, or lessor thereof in any premises upon which alcoholic liquor is sold at retail.
 (2) This section shall not apply to the holder of a farm winery license. [Emphasis added].
Neb. Rev. Stat. § 53-171 (Reissue 2004) states, in pertinent part:
 No person licensed as a manufacturer or wholesaler of alcoholic liquor shall be permitted to receive any retail license at the same time. No person licensed as a retailer of alcoholic liquor shall be permitted to receive any manufacturer's or wholesale license at the same time. This section shall not apply to the holder of a farm winery license. . . . [Emphasis added].
The above emphasized provisions of § 53-169 and § 53-171 could be interpreted to mean that a farm winery licensee may hold additional retail licenses and sell other liquor product apart from that produced at the farm winery. However, such an interpretation is not supported by the legislative history of LB 279. The Committee Statement for LB 279 provides that a farm winery license "entitles the holder to sell wines produced at the farm winery at wholesale and retail and at off-premise retail sites and to allow sampling of the wine at the farm winery and at one branch outlet in the state in reasonable amounts." The Committee Statement further provides that it is the intention of the bill to exempt farm wineries from the restriction that a manufacturer not be allowed to hold a retail license. The purpose of LB 279 was to allow farm winery licensees to produce their wine and directly sell, at retail, the wine that they produced. There was no mention at all, either in Committee or during floor debates, that farm wineries would be allowed to obtain separate licenses to sell product not produced at the winery.
The principles of statutory construction require that all components of a statute be conjunctively considered, so that different provisions of the act are consistent, harmonious and sensible. See, e.g., Central States Foundation v. Balka,256 Neb. 369, 590 N.W.2d 832 (1999). Reading § 53-169 and § 53-171 to suggest that a farm winery licensee may obtain a separate retail license to sell other liquor product does not harmonize with §53-123.11, which specifically provides that farm winery licensees shall produce and sell their own product.
Further, such a suggested interpretation would mean that an applicant need only obtain a farm winery license in order to obtain any other combination of liquor licenses in violation of the prohibitions of § 53-169 and § 53-171. This suggested interpretation of § 53-169 and § 53-171 was specifically rejected by our office in a previous opinion regarding brewpub licenses, wherein we concluded that the exemption for brewpubs in those statutes did not mean that a brewpub license holder had any more right to combine licenses in violation of the three-tiered system than was provided by § 53-123.14. (Atty. Gen. Op. No. 96017). Similarly, farm wineries were provided the exemption in § 53-169
and § 53-171 in order to effectuate their rights under §53-123.11, to both manufacture and sell at retail the wine that they produce.
In conclusion, in our opinion, farm winery licensees are not allowed to obtain a separate retail license to sell product that has not been produced at the winery.
Sincerely,
 Milissa Johnson-Wiles Assistant Attorney General
 Approved: _______________________________ Attorney General